**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JEFFREY W. HOLTON,

      Plaintiff,

v.                                  Case No.: 8:25-cv-1606-WFJ-LSG

FLORIDA DEPARTMENT OF
REVENUE, MARY BATT, T.
PAUL SESSIONS, JR.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

The *pro se* plaintiff Jeffrey W. Holton moves under 28 U.S.C. § 1915(a)(1) to proceed without pre-payment of the filing fee. Doc. 6. Docs. 1, 9-10. Because the amended complaint fails to state claim under 28 U.S.C. § 1983 and because the case Holton purports to bring under federal law is indisputably meritless, I recommend denying the motion, dismissing the amended complaint without leave to amend, and closing the case.

### I.    BACKGROUND

An action to dissolve the marriage of Jeffrey W. and Joy Holton began in Polk County Circuit Court on August 5, 2022.[1] *See* Doc. 10-2 at 27. Nearly two years later

---

[1] *See Joy Holton v. Jeffrey Wayne Holton*, No. 2022DR006416 (Fla. 10th Cir. Ct.). In reviewing the sufficiency of a pleading, judicial notice of public records for the fact of their filing (but not for the truth of the statements contained therein) is appropriate. FED. R. EVID. 201; *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999).

came a petition for child support. On January 16, 2025, Jeffrey Holton requested that the Office of the State Attorney, Child Support Enforcement Division, produce copies of "all financial affidavits used to acquire financial services from the state[,]" which he sought "for the purpose of discovery and for use in preparation for the trial" in his state court domestic relations proceedings. Docs. 10 at 5, 10-2 at 27. Shortly thereafter, Assistant State Attorney Christine A. Laney responded on behalf of the Florida Department of Revenue, Child Support Enforcement Division, and said that the DOR "has no responsive documents." Docs. 10 at 6, 10-2 at 29.

On February 9, 2025, Holton submitted two public records requests under the Florida Public Records Act, Chapter 119, Florida Statutes. The first request sought from the DOR "[t]he complete and original financial affidavit(s) submitted by Joy D. Holton in connection with her application for child support services" as well as "communications, notes, case files, or electronic records related to review and approval of the financial affidavit," "[i]nternal emails, memos, or correspondence discussing the availability or storage of these records," and "[a]ny internal policies, procedures, or internal guidance documents concerning the collection, verification, and retention of financial affidavits used in child support applications." Docs. 10 at 4-5, 10-2 at 14-15. The second request sought from the State Attorney's Office "copies of any and all records in your custody or control related to" Assistant State Attorney Christine Laney. Doc. 10-2 at 18. Specifically, the request demanded (1) personnel records, (2) internal e-mails and communications in which Laney "discusses or is discussed in the context of child support enforcement or any related

2

incentives or performance metrics," and (3) contracts or agreements, including those "outlining how Ms. Laney's role was funded" and "[a]ny documentation detailing special responsibilities, quotas, or performance goals related to child support enforcement or case outcomes." Doc. 10-2 at 18.

On March 5, 2025, Holton sent a formal demand to the State Attorney's Office seeking "immediate compliance" with the public records request as to ASA Laney. Doc. 10-2 at 21. Records Administrator T. Paul Sessions, Jr., responded by e-mail with an attached invoice for the estimated time necessary to review potentially responsive documents, which comprised a sixty-nine-page personnel file, 106 pages of contracts, and 117,933 e-mails. Doc. 10-2 at 23. Sessions explained the search parameters and asked that Holton clarify his request for certain items. The invoice estimates 1,474.5 hours of labor to review the documents for responsiveness and seeks pre-payment of $57,610.48 in expenses associated with fulfilling the records request. Doc. 10-2 at 25.

On April 3, 2025, Mary Batt responded on behalf of DOR to Holton's request for Joy Holton's "financial affidavit, communications, and [the DOR's] procedures" related to Joy Holton's child support case. Doc. 10-2 at 33. Batt explained that "[t]he Child Support Program is not authorized to release confidential information." Batt added that state and federal law require redacting "confidential information about the other parent" including addresses, employment information, Social Security numbers, bank account information, driver license information, and communications and correspondence from the other parent or caregiver. Doc. 10-2

at 33. Accordingly, the DOR produced a redacted copy of Joy Holton's financial affidavit. Doc. 10-2 at 34-37.

In response, Holton requested under Section 119.07(1)(d) to visually inspect the original, unredacted financial affidavit and claimed that Florida law requires an opportunity to inspect before redaction. Doc. 10-2 at 40. Batt responded that Holton could visually inspect the records at their Lakeland Child Support Office but that "[t]he redactions will remain to the Financial Affidavit for Administrative Support Proceeding as required by State and Federal Law." Doc. 10-2 at 42.

Holton filed this action on June 20, 2025. Doc. 1. On June 23, 2025, Holton sent a litigation hold notice to ASA Laney "concerning anticipated federal litigation under 42 U.S.C. § 1983, arising from your role in the *Holton v. Holton* matter (Case No. 53-2022-DR-006416), currently pending in the Tenth Judicial Circuit, Polk County." Doc. 10-2 at 44-47. Holton sent a similar letter to Batt. Doc. 10-2 at 49-50, 56. After an August 28, 2025, order granted Holton leave to amend, Holton filed an amended complaint suing Batt and Sessions in their individual and official capacities. Docs. 9, 10 at 2. The amended complaint asserts two counts under 42 U.S.C. § 1983 for "First Amendment Retaliation" and one count for prospective injunctive relief. Holton seeks ten categories of damages, including "Emotional Distress (garden-variety)," "Procedural and Opportunity Costs," "Family-Proceeding Impacts," and "Reputational and Practical Harm." Doc. 10 at 8-10.

4

## II.    DISCUSSION

### a.  Standard of review

In a civil action, the clerk of court must collect a filing fee from the initiating party. 28 U.S.C. § 1914. A party may avoid paying the fee by submitting an affidavit showing that "the person is unable to pay such fees." 28 U.S.C. § 1915(a)(1); *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). However, before a party can proceed without paying the fee, Section 1915 requires review and dismissal if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from relief. 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *Martinez v. Kristi Cleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997).

To state a claim, a complaint must contain a short and plain statement of the grounds for jurisdiction, a short and plain statement of the claim showing the pleader is entitled to relief, and a demand for the relief sought. FED. R. CIV. P. 8(a)(1)-(3); *McCurry v. Metro. Life Ins. Co.*, 208 F. Supp. 3d 1251, 1255 (M.D. Fla. 2016). A pleading must "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and must state "each claim founded on a separate transaction or occurrence . . . in a separate count." FED. R. CIV. P. 10(b). These pleading requirements

> work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts

5

support which claims and whether the plaintiff has stated any claims upon which relief can be granted.

*Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996).

Dismissal for failure to state a claim is appropriate if the facts, as pleaded, fail to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege facts supporting an entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the complaint's legal theories lack merit or if the complaint's factual allegations fail to state a plausible claim for relief, dismissal may occur before service of process. *Thompson v. Rundle*, 393 F. App'x 675, 678 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678); *Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (per curiam). Although *pro se* pleadings receive a favorable construction, a *pro se* plaintiff must nonetheless satisfy the pleading requirements. *McNeil v. United States*, 508 U.S. 106, 113 (1993).

### b. Holton's Section 1983 claims fail as a matter of law.

Section 1983 of Title 28, United States Code, creates civil liability for any person who, under color of state law, violates another person's constitutional rights. "The purpose of [Section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). A plaintiff may sue a state actor in an official or individual capacity. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). An individual capacity claim "seek[s] to

6

impose personal liability upon a government official for actions he takes under color of state law." *Id.* To establish personal liability, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166.

By contrast, an official capacity claim "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* (quoting *Monell v. New York City Dep't. of Soc. Serv.*, 436 U.S. 658, 690 (1985)). To establish government entity liability, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.* "A policy is a 'decision that is officially adopted by the [[entity]], or created by an official of such a rank that he or she could be said to be acting on behalf of [[entity]].'" *Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1299 (11th Cir. 2023) (quoting *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1356 (11th Cir. 2022)). "A custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Id.* (quoting *Christmas*, 51 F.4th at 1356). "Demonstrating a policy or custom requires showing a persistent and wide-spread practice." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).

Holton asserts two counts for First Amendment retaliation based on the actions of Sessions and Batt in responding to his public records requests. He appears to sue Sessions and Batt in both their individual and official capacities. Doc. 1 at 2, 10-15. Holton claims that the delivery of an invoice by Sessions requesting a substantial pre-payment before providing the requested records was retaliation for

7

Holton's "protected petitioning." Doc. 10 at 11. Similarly, Holton claims that Batt's refusing to allow an inspection of the unredacted financial affidavit was motivated by Holton's protected activity. Doc. 10 at 14. Holton's claims fail because he alleges no facts showing the deprivation of a federally guaranteed right and because he fails to allege facts showing a policy or custom that played a part in violating federal law.

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). However, "[t]here is no First Amendment right of access to public information." *Foto USA, Inc. v. Bd. of Regents of Univ. Sys. of Fla.*, 141 F.3d 1032, 1035 (11th Cir. 1998). The media and the public enjoy a First Amendment right of access to criminal proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980); *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001). Although the public "may enjoy the right of access to 'pleadings, docket entries, orders, affidavits or depositions *duly filed*'" in a civil case, that common law right of access is limited and "does not extend to information collected through discovery which is not a matter of public record." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) (citation omitted) (emphasis in original); *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983). Furthermore, "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978). This is because "'[t]he Constitution

8

itself is neither a Freedom of Information Act nor an Official Secrets Act'" and because "'the right to speak and publish does not carry with it an unrestricted license to gather information.'" *Foto USA*, 141 F.3d at 1035 (quoting *Calder v. I.R.S.*, 890 F.2d 781, 783-84 (5th Cir. 1989), and *Speer v. Miller*, 864 F. Supp. 1294 (N.D. Ga. 1994)). Accordingly, Holton cannot plausibly allege the violation of a federally guaranteed right under the First Amendment to access records possessed or maintained by state entities.

Because Holton has no First Amendment right to access information in the control of the DOR or the State Attorney's Office, Holton cannot state a claim under Section 1983 for First Amendment retaliation. Even if Holton could show a First Amendment violation, he fails to allege facts showing that a policy or custom played a part in any alleged violation. Finally, Holton alleges no facts showing that either Sessions or Batt acted "under color of state law," that is, that they "abuse[d] the position given to [the]m by the State." *West v. Atkins*, 487 U.S. 42, 50 (1988); *see* FLA. STAT. § 409.2579 (designating as confidential and exempting from disclosure under Section 119.07, Florida Statutes, information gathered from applicants for, or recipients of, child support services); FLA. STAT. § 119.07(4) (requiring the custodian of public records to furnish a copy of a record "upon payment of the fee prescribed by law" or by that subsection).

To the extent that Holton believes the DOR or the State Attorney's Office violated Florida's Public Records Act, Holton's remedy lies in state court under state law. *See Chandler v. City of Sanford*, 121 So. 3d 657, 660 (Fla. 5th DCA 2013) ("The

9

Florida Constitution requires that the public have full access to public records, which includes any 'public record made or received in connection with the official business of any public body, officer, or employee of the state.'"); *Rhea v. Dist. Bd. of Trs. of Santa Fe Coll.,* 109 So. 3d 851, 855 (Fla. 1st DCA 2013) ("A citizen's access to public records is a fundamental constitutional right in Florida."); FLA. STAT. §§ 119.01, 119.07, 119.11-.12.

### c. Because this action derives from a domestic relations case over child support, abstention may be warranted.

Holton's claims derive primarily from the view that state agencies wrongfully denied him access to information (1) about the financial particulars of his former spouse and (2) about the prosecutor pursing a claim for child support on behalf of DOR and the former spouse. Holton sought this information to use in preparation of trial in his state court domestic relations proceedings. Doc. 10-2 at 27. The docket covering the Holtons' dissolution and child support dispute is voluminous and spans several years and multiple appeals. The lack of a federally protected right and the quintessential state law nature of Holton's claims suggest that, even if Holton could amend to state a claim under Section 1983, abstention is warranted.

"The federal judiciary has traditionally abstained from deciding cases concerning domestic relations." *Ingram v. Hayes*, 866 F.2d 368, 369 (11th Cir. 1988). Because of this, "federal courts generally dismiss cases involving divorce and alimony, child custody, visitations rights, establishment of paternity, child support, and enforcement of separation or divorce decrees still subject to state court

modification." *Id.* at 369. The policies favoring abstention include "'the strong state interest in domestic relations matters, the competency of state courts in settling family disputes, the possibility of incompatible federal and state decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts.'" *Id.* at 369-70 (quoting *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir. 1978)). As directed in *Ingram*, abstention and dismissal are warranted "if hearing the claim would mandate inquiry into the marital or parent-child relationship." *Id.* at 370.

Although Holton's amended complaint requests no relief directly implicating the marital or parent-child relationship, any order requiring disclosure of information gathered as part of the child support proceeding would necessarily interfere with the state court's adjudication of a family law matter. Florida courts have greater expertise and competency to settle both family disputes and challenges to the disclosure of records pertinent to that dispute. Failing to abstain from matters of primarily state concern such as this action will burden an already overwhelmingly busy federal docket. Accordingly, abstention is warranted here.

### d. Leave to amend should be denied.

A district court typically must provide a *pro se* plaintiff with notice of the intent to dismiss and an opportunity to respond. *See Quire v. Smith*, No. 21-10473, 2021 WL 3238806, at *1 (11th Cir. July 30, 2021); *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011). "An exception to this requirement exists, however, when amending

11

the complaint would be futile, or when the complaint is patently frivolous." *Quire*, 2021 WL 3238806, at *1; *Davis v. Kvalheim*, 261 F. App'x 231, 234 (11th Cir. 2008) ("[D]istrict courts have the inherent power to *sua sponte* dismiss frivolous suits without giving notice to the parties."). A case is frivolous if it "has little or no chance of success" and the complaint demonstrates "that the factual allegations are 'clearly baseless'" and "the legal theories are 'indisputably meritless.'" *Carroll*, 984 F.2d at 393 (citing *Neitzke*, 490 U.S. at 327); *Kvalheim*, 261 F. App'x at 234. Based on the absence of cognizable federal claim under any construction of the facts and the preference for abstention under *Ingram*, further amendment would be futile. Thus, I recommend dismissing the amended complaint without leave to amend.

## III.   CONCLUSION

Accordingly, for the reasons described above, I recommend denying Holton's motion to proceed *in forma pauperis*, Doc. 6; dismissing the amended complaint, Doc. 10, without leave to amend; terminating any pending motion, and closing the case.

**REPORTED** in Tampa, Florida, on this 30th day of December, 2025.


_____
LINDSAY S. GRIFFIN
United States Magistrate Judge

12

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the report and recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the report and recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.